**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NOAH NAPARSTECK, personal representative for the ESTATE OF XAVIER SIMMONS, DECEASED, | CIVIL ACTION NO. 3:11-CV-1544 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, LUZERNE COUNTY, CHILDREN AND YOUTH SERVICE OF LUZERNE COUNTY, ELIZABETH LOZOSKY-LAYLO, FRANK CASTANO, ROSE GALLAGHER, ANTHONY LUMBIS, VICTOR J. DROSEY, MARSHA ANN BASCO, BERNARD PODCASY and JENNIFER ROGERS, | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is the Defendants' Motion to Dismiss Plaintiff's Complaint. (Doc. 12). Plaintiff Noah Naparsteck, personal representative for the Estate of Xavier Simmons, alleges Defendants violated Xavier Simmons's Fourteenth Amendment Due Process rights as their actions proximately caused his injury and subsequent death. Plaintiff also alleges state-law survival and wrongful-death actions. The Defendants argue that the Fourteenth Amendment does not protect individuals from injuries caused by private parties and that Plaintiff's action does not fall into either of the exceptions to this rule. Moreover, they argue that the state-law claims are barred by Pennsylvania's Political Subdivisions Tort Claims Act ("PSTCA"). While the state-law claims are barred by the PSTCA, Plaintiff's claim does have a cause of action under the Fourteenth Amendment. Therefore, the

Motion to Dismiss will be granted in part and denied in part.

## BACKGROUND

Plaintiff alleges the following in his Amended Complaint. (Doc. 11). On November 29, 2007, Luzerne County Children and Youth Services ("CYS") were noticed that Tiffany Simmons had left her children with her mother, Sharon Barr, for a two-week period. One of her children, Xavier Simmons, was only six weeks old at that time. CYS knew that Sharon Barr was unable to appropriately care for the children due to mental health issues and that Tiffany Simmons was addicted to illegal drugs. As such, CYS assigned a case worker to the situation on December 4, 2007 and developed a Safety Plan on December 11, 2007.

The Safety Plan removed Xavier's three older siblings from their Mother's custody and placed them with their Father. The Plan left Xavier alone with his Mother, but she was not allowed to remove him from his Grandmother's home. It also specifically provided that Xavier would have no contact with Tiffany Simmons's dangerous boyfriend, Alan Leitzel. The Plan stated that violation of this provision would cause CYS to file for shelter care of Xavier. However, Tiffany Simmons violated the Plan. CYS received numerous reports confirming that Xavier had visited Leitzel's home on December 26, 2007 and that the children were told to lie about their visit. On January 4, 2008, CYS interviewed one of Xavier's siblings and directly confirmed the visit and the order to lie about it. CYS made a determination sometime around then to file a dependency action that would remove Xavier from the care of Tiffany Simmons and Sharon Barr. Although the paperwork was completed January 4, 2008, it was not submitted until January 9. On January 14, 2008, CYS filed a petition with the Court of Common Pleas requesting a determination that Xavier be found

dependent. "However, despite the clear terms of the Safety Plan, nothing was done by any of the Defendants to remove Xavier from his mother and Alan Leitzel from December 26, 2007 when they learned the Safety Plan was violated and January 14, 2008 when a petition was finally filed with the Court of Common Pleas." (*Id.* at p. 6).

Tragically, on January 14, 2008, the same day as the petition was filed in the Court of Common Pleas, Tiffany Simmons again brought Xavier to Leitzel's home. While there, Leitzel violently shook Xavier and hit his head. Xavier suffered severe brain injuries and died the next day as a result.

Plaintiff filed his Complaint in the Court of Common Pleas of Luzerne County on July 21, 2011. The Defendants removed the action on August 19, 2011, and filed a motion to dismiss on August 26, 2011. (Doc. 3). Plaintiff, believing the Defendants' objections could be remedied with the filing of an amended complaint, was granted leave to do so by the Court on October 7, 2011. (Doc. 9). Plaintiff then filed his Amended Complaint, alleging violations of Xavier's Fourteenth Amendment Due Process rights pursuant to 42 U.S.C. § 1983 as well as a survival action pursuant to 20 Pa. Cons. Stat. § 3373 and 42 Pa. Cons. Stat. § 8302, and a wrongful death claim pursuant to 42 Pa. Cons. Stat. § 8301. (Doc. 11). The Defendants again move to dismiss all claims. (Doc. 12). Their Motion to Dismiss has been fully briefed and is ripe for review.[1]

---

[1] This action mirrors two virtually identical actions docketed at 3:11-cv-1545 and 3:11-cv-1546. As Federal Rule of Civil Procedure Rule 42(a) allows a court to consolidate actions that "involve a common question of law or fact," the Court will consolidate those two other actions into this one in an appropriate order below.

3

## DISCUSSION

**I. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly,* 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike

4

conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

**II. Plaintiff's Claims under the Fourteenth Amendment**

The Due Process Clause of the Fourteenth Amendment forbids states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, it imposes no obligation that the government aid or protect its citizens. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 255 (3d Cir. 2007) (citing *DeShaney v. Winnebago County Dep't. of Soc. Servs.*, 489 U.S. 189, 196 (1989)). It is well established that the protections afforded by the Amendment "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means," specifically the actions of private parties. *DeShaney*, 489 U.S. at 195. Moreover, even if a state undertakes rescue services, the Third Circuit has ruled that the Due Process Clause imposes no obligation on the state to provide such services in a competent manner. *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003).

There are, however, two exceptions to this general rule: the "special relationship" exception and the state-created danger rule. *Jiminez*, 503 F.3d at 255. The application of these two exceptions to the instant case will be explored below.

**1. Special Relationship Theory**

The first exception exists where the state "by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *Brown*, 318 F.3d at 478 (quoting *DeShaney*, 489 U.S. at 200). As such, a special relationship is forged through the state's restraint of an individual that correspondingly exposes him to harm. *Id.* The Supreme Court in *DeShaney v. Winnebago County Department of Social Services* explained that this

6

affirmative duty does not arise from a state's "knowledge of the individual's predicament or from its expressions of intent to help him," but of physical and involuntary custody, such as "incarceration, institutionalization, or other similar restraint of personal liberty." 489 U.S. at 199-200. The Third Circuit "has read *DeShaney* primarily as setting out a test of physical custody." *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1370 (3d Cir. 1992); *see also Sanford v. Stiles*, 456 F.3d 298 n.4 (3d Cir. 2006) (finding the special relationship exception is "very limited" and generally "requires a custodial relationship."). Thus, it is clear that the special relationship exception requires some sort of physical custody of the citizen by the state. *See Badway v. City of Philadelphia*, Civ. Act. No. 07-1333, 2010 WL 915002 at *6 (E.D. Pa. Mar. 15, 2010) (finding that "the City could only create a special relationship with [the decedent] by taking involuntary, full-time, and continuous physical custody of him"); *D.N. v. Snyder*, 608 F. Supp. 2d 615, 623 (M.D. Pa. 2009) ("The special relationship theory places a burden upon state actors who maintain physical custody over a plaintiff.").

In *Nicini v. Morra*, the Third Circuit held that foster children could be analogized to the "incarcerated or involuntarily committed" for the purposes of the special relationship exception. 212 F.3d 798, 808 (3d Cir. 2000). *Nicini* based the analogy between foster children and the clearly institutionalized on the state's affirmative actions in placing a child in a situation where he would be "dependent upon the state." *Id.* (citing D.R., 972 F.2d at 1372). Specifically, the Third Circuit held that "when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties. The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983." *Id.*

7

The Amended Complaint never alleges that any of the state actors ever took physical custody of Xavier. Instead, the Plaintiff alleges that Xavier was placed in a setting "analogous to foster care," which included a measure of isolation through the removal of his siblings. (Am. Compl. at ¶¶ 36.3-36.5, Doc. 11). Plaintiff contends that these limitations functionally amounted to state custody. In light of *Nicini*, the Court determines that the special relationship exception is applicable to the alleged facts of the instant case. Because CYS directed that Xavier be limited to the home of his Grandmother, the Court finds this arrangement sufficiently similar to foster care as to trigger the special relationship exception. In fact, *Nicini* itself considered a situation that was not even true foster care, but where family services had custody of a child and acquiesced to the child's stay in an environment which ultimately brought him harm. *Id.* at 809. The Third Circuit found those particular facts "sufficiently analogous to a foster care placement" as to trigger the exception. *Id.* Therefore, the Court finds here that CYS's directive that Xavier remain in Sharon Barr's home is also sufficiently analogous to foster care for the exception to apply. Therefore, I will deny Defendant's assertion that the exception cannot apply to the instant case.

**2. State-Created Danger Rule**

The state-created danger rule is the second exception to the rule that states have no affirmative duty to protect their citizens. While a state "does not become the permanent guarantor of an individual's safety by having once offered him shelter," *DeShaney*, 489 U.S. at 189, the state may violate the constitution where its actions are "affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citing *Schieber v. City of Phila.*, 320

8

F.3d 409, 416 (3d Cir. 2003)). In other words, while a state has no constitutional obligation to assist its citizens, it can be liable for its "affirmative acts which work to plaintiffs' detriments in terms of exposure to danger." *D.R.*, 972 F.2d at 1374. In a popular quote by the Seventh Circuit, that court opined that "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." *Bowers v. De Vito*, 686 F.2d 616, 618 (7th Cir. 1982).

In the Third Circuit, in order to make out a claim for the state-created danger exception, a plaintiff must demonstrate that:

(1) "the harm ultimately caused was foreseeable and fairly direct;"

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright*, 443 F.3d at 281 (citations omitted).

The Defendants rely on the fourth element to prove that their alleged conduct could not satisfy the state-created danger exception. Specifically, they argue that they took no affirmative action, and the harms Plaintiff complains of are more properly defined as omissions. Moreover, even if their omissions are construed as affirmative actions, they disagree that any such alleged action rendered Xavier more vulnerable than he otherwise would have been without their actions.

9

In response, the Plaintiff alleges three generalized actions on the part of the Defendants that they believe trigger this exception: (1) Defendants removed Xavier's three older siblings from his presence, which may have deprived CYS of critical information and Xavier of physical protection; (2) Defendants affirmatively acted by not responding sooner to the violations of the Plan, which "emboldened [Simmons] to continue violating the Plan"; and (3) Defendants appointed "Sharon Barr as the supervisor of Tiffany Simmons and Xavier when they knew, or should have known, that she was unstable, incapable of acting in such a capacity, and unavailable for extended periods of time throughout the week." (Pl.'s Br. at 10-11, Doc. 16).

Crucially, the fourth element considers "whether a defendant exercised his or her authority to create a foreseeably dangerous situation." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006). That a state actor merely acted deliberately is not enough to satisfy this element. *Id.* Rather, the exception requires a "direct causal relationship between the affirmative act of the state and plaintiff's harm." *Id.* Unless the action in question was the "but-for" cause of the harm, the exception does not apply. *Id.* Moreover, "affirmatively creating dangerous conditions" does not suffice, either. *Id.* at 433. For example, in *Morse v. Lower Merion School District*, the Third Circuit found that a school door left purposely unlocked elevated the risk that a teacher would be attacked. 132 F.3d 902, 915 (3d Cir. 1997). However, even though this was exactly the harm that ultimately materialized, the state action did not satisfy the fourth prong of the test as the "deadly attack was not a foreseeable and fairly direct result of defendants' behavior." *Id.* at 915-16. To be sure, the state actor must "directly place[] the victim in harm's way." *Id.* at 915.

The Court does not find the Defendants' alleged actions to be sufficiently foreseeable

10

or direct to trigger the state-created danger exception. Instead, Plaintiff's arguments are highly speculative and bolstered by the benefit of hindsight. While it is possible that the presence of Xavier's siblings could have somehow prevented this tragedy, their exclusion from Barr's household–which was not even the scene of the assault–was not the but-for cause of Xavier's death. Similarly, placing Xavier within the Barr household did not directly place Xavier in danger and was also not the but-for cause of his death. Instead, CYS's actions are most analogous to the unlocked door in *Morse*, and I cannot say that but-for either of these decisions on the part of CYS that Xavier would have remained safe. That the result may have been different in a hypothetical universe does not render these actions sufficient for liability under the Fourteenth Amendment. Thus, I cannot find that the state-created danger exception applies to the removal of Xavier's siblings. Moreover, I am not persuaded by Plaintiff's argument that Defendants' alleged omissions emboldened Xavier's Mother to violate the plan. This is an attempt to portray a clear omission as an affirmative action, which is prohibited by the state-created danger exception. Therefore, the Court will dismiss Plaintiff's Fourteenth Amendment claim insofar as it relies on the state-created danger exception.

**III.   Defendants Lumbis, Drosey, Basco, Podcasy, and Rodgers**

Defendants argue that the Amended Complaint does not contain any factual allegations against Defendants Anthony Lumbis, Victor J. Drosey, Marsha Ann Basco, Bernard Podcasy, and Jennifer Rogers, and the claims against them should be dismissed. Plaintiff agrees and notes that he stipulated to the dismissal of these parties prior to the action's removal from the Court of Common Pleas. Therefore, the Court will dismiss the above Defendants.

11

**III. Plaintiff's State-Law Claims**

Defendants argue that the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8541, immunizes them against Plaintiff's state-law tort claims. Section 8541 of the statute immunizes local agencies from damages, while Section 8545 extends this immunity to agency employees acting within the scope of their employment. *Id.* § 8545. While there are eight enumerated exceptions to this rule, *Id.* § 8542(b), no party argues that any of these exceptions apply. Moreover, an employee may still be liable where the employee's conduct "constituted a crime, actual fraud, actual malice or willful misconduct." *Id.* § 8550. Of course, the agency Defendants are fully protected by statute and are not subject to the exceptions like the individual defendants. *Beard v. Borough of Duncansville*, 652 F. Supp. 2d 611, 628 (W.D. Pa. 2009).

Willful misconduct, which is the only transgression alleged in the instant case, "has the same meaning as the term 'intentional tort.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (citing *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995); *Kuzel v. Krause*, 658 A.2d 856, 859 (Pa. Commw. Ct. 1995)). Thus, a "governmental employee must desire to bring about the result that followed his conduct or be aware that it was substantially certain to follow." *Kuzel*, 658 A.2d at 859 (citation omitted). The wrongful conduct alleged must have been "carried out with the intention of achieving exactly that wrongful purpose." *Pelzer v. City of Phila.*, 656 F. Supp. 2d 517, 539 (E.D. Pa. 2009) (citing *Jones v. City of Phila.*, 893 A.2d 837, 843 (Pa. Commw. Ct. 2006)).

This is a very high burden of culpability. In *Robbins v. Cumberland County Children & Youth Services*, the court determined that severe failures on the part of CYS that led to similarly tragic results did not harbor the requisite "malignant feelings or wicked disregard"

to trigger the wilful disregard standard.  802 A.2d 1239, 1253 (Pa. Commw. Ct. 2002).  In that case, before a mother suffocated her child, CYS had knowledge of three "remarkably similar" arm fractures inflicted on the child's siblings in the preceding months. *Id.* 1243-44. Yet, even after that suspicious death, CYS only acted by reopening the file on the family, and it allowed the mother to retain care of the remaining two children in the interim period. *Id.* at 1244.  Moreover, the mother was allowed to delay a CYS home visit, and she attempted to suffocate one of the other children on very the date of the cancelled visit. *Id.* at 1244.  Even in such extreme circumstances, that court could not impute wilful misconduct.

Here, Plaintiff argues that the facts contained within the Amended Complaint demonstrate a sufficient claim for willful misconduct as the Defendants willfully ignored problems occurring within Xavier's household.  The Amended Complaint alleges that the CYS employees upon "learning of the repeated violations of the safety plan . . . did nothing for more than ten (10) days."  (Pl.'s Br. at 14, Doc. 16).

There is no basis for finding willful misconduct within the Amended Complaint, and the Court finds that the individual defendants did not act with the requisite willful misconduct as to attach tort liability.  There are no allegations in the Amended Complaint that could support such a charge, as it only alleges, at most, recklessness on the part of any Defendant. Even assuming that the Defendants knew that Xavier was in Leitzel's presence and that Leitzel was very dangerous, there is no indication that any Defendant was "substantially certain" that Xavier would be exposed to deadly and traumatic injuries. Although Plaintiff avers that the Defendants should have been on notice as to the "substantial amount of children's injuries and deaths" that had occurred within their

jurisdiction (Am. Compl. p. 6, Doc. 11), this warning is not enough to have put them on notice that the instant case was virtually certain to culminate in death. Therefore, the Court will dismiss Plaintiff's state-law tort claims as they are barred by the PSTCA.

## **CONCLUSION**

For the reasons above, the Court will dismiss Plaintiff's Fourteenth Amendment claim to the extent that it relies upon the state-created danger theory. However, the Court will not dismiss Plaintiff's Fourteenth Amendment claim to the extent that it proceeds upon a special relationship theory. As agreed by the parties, the Court will also dismiss Defendants Anthony Lumbis, Victor J. Drosey, Marsha Ann Basco, Bernard Podcasy, and Jennifer Rogers. Finally, the Court will dismiss the Plaintiff's state-law claims as they are barred by the Political Subdivision Tort Claims Act. An appropriate Order follows.

| | |
|---|---|
| January 17, 2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOAH NAPARSTECK, personal representative for the ESTATE OF XAVIER SIMMONS, DECEASED, | CIVIL ACTION NO. 3:11-CV-1544 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, LUZERNE COUNTY, CHILDREN AND YOUTH SERVICE OF LUZERNE COUNTY, ELIZABETH LOZOSKY-LAYLO, FRANK CASTANO, ROSE GALLAGHER, ANTHONY LUMBIS, VICTOR J. DROSEY, MARSHA ANN BASCO, BERNARD PODCASY and JENNIFER ROGERS, | |
| Defendants. | |

## ORDER

NOW, this 17th day of January, 2012, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Fourteenth Amendment claim is **DISMISSED** insofar as it proceeds upon the state-created danger exception.

2. Plaintiff's survival action brought pursuant to 20 Pa. Cons. Stat. § 3373 and 42 Pa. Cons. Stat. § 8302 (Count VI) is **DISMISSED**.

3. Plaintiff's claim for wrongful death brought pursuant to 42 Pa. Cons. Stat. § 8301(Count VII) is **DISMISSED**.

4. Defendants Anthony Lumbis, Victor J. Drosey, Marsha Ann Basco, Bernard Podcasy, and Jennifer Rogers are **DISMISSED**.

5. The Clerk of Court is directed to **CONSOLIDATE** the cases docketed as Civil Action Nos. 3:11-cv-1545 and 3:11-cv-1546 as Civil Action No. 3:11-CV-1544 and to **CLOSE** the cases docketed

    as Civil Action Nos. 3:11-cv-1545 and 3:11-cv-1546.

6. All future documents filed in this consolidated case shall be filed under the case docketed as Civil Action No. 3:11-CV-1544.

                /s/ A. Richard Caputo
                A. Richard Caputo
                United States District Judge